IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

NOV 28 2012

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Respondent, | ) | |
| | ) | |
| V. | ) | Crim. No. 1:09-CR-00402-CCB-1 |
| | ) | |
| DAMON GERALD DICKERSON | ) | |
| | ) | |
| Petitioner. | ) | |

---

PETITION TO VACATE PETITIONER'S CONVICTION PURSUANT TO 28 U.S.C. § 2255 AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF.

---

COMES NOW the Petitioner, Damon G. Dickerson, pro se, and hereby respectfully moves this Honorable Court to vacate his conviction for "being a felon in possession of a firearm under 18 U.S.C. §§ 922(g)(1) and 924(e)," based upon his failure to receive the effective assistance of counsel as guaranteed to him by the Sixth Amendment to the United States Constitution, and consequently renders his guilty plea unknowingly and involuntarily in violation of Hill v. Lockhart, 474 U.S. 52 (1985); Strickland v. Washington, 466 U.S. 668, 687-88 (1984); also see e.g., Tollett v. Henderson, 411 U.S. 258, 266-67 (1973), and United States v. Gordon, 156 F.3d 376, 380-81 (2nd Cir. 1998)(ineffective assistance of counsel, and plea was involuntary, when reasonable probability existed that but for counsels unprofessional error in grossly under-estimating defendants maximum sentencing exposure, defendant would not have accepted guilty plea offer). See also, Glover v. United States, 531 U.S. 198, 203 (2001); Glover held that "if an increased prison term did flow from an error the petitioner has established Strickland prejudice." Id. at 220 (citations omitted).

Accordingly, if Dickerson can show a "reasonable probability" that absent his counsel's ineffective performance he would have obtained a verdict leading to less time in prison, then, applying Strickland and Glover, he has satisfied the prejudice prong of the ineffective assistance of counsel test. In support of this Petition, the Petitioner states as follows:

## Procedural History of the Case

This case arose upon the arrest of Damon G. Dickerson and being charged in a Two-Count Indictment on July 21, 2009. He was charged with one count of possession with intent to distribute cocaine base under 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii) and one count of being a felon in possession of a firearm under 18 U.S.C. §§ 922 (g)(1) and 924(a). See Exhibit A.

Presiding throughout this case, was the Honorable Catherine C. Blake. Petitioner had been represented by a number of attorney's with discussions involving a number of approaches to the resolution of this case. Ultimately, an agreement – which is the relevant issue of this § 2255 pleading – was reached that entailed a plea offer to the gun possession count. That agreement was formalized in a plea letter dated October 20, 2010. See Docket Sheet Entry @ 1:09-CR-00402-CCB-1 (U.S. District Court).

The agreement included in its statement of facts an acknowledgment by Petitioner of three prior convictions for serious drug charges. (One of those charges are being challenged here under the provisions of Gideon v. Wainwright, 372 U.S. 335 (1963)). The agreement also contained a specific acknowledgment that, as a result of Petitioner's prior convictions, that he would qualify for treatment under the ACCA, 18 U.S.C. § 924(e). [FN 1]. The agreement specified that qualifications

---

FN 1 – 924(e)(1) specifies that "...a person who violates section 922(g)(1) of this title and has three previous convictions by any court referred to in section 922 (g)(1) for a violent felony or a serious drug offense, or both, committed on occassions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years..." Id.

under the ACCA carried a 15-year (180 month) mandatory minimum. There was a further acknowledgment that the appropriate sentencing guideline range for Petitioner was 188-235 months. The parties agreed that they would treat the agreement under Federal Rule of Criminal procedure Rule 11(c)(1)(C) and specify a sentence of 188 months.

By the plea session on November 9, 2010, it has become clear that Petitioner was questioning whether his oldest prior conviction should properly be considered as a predicate under the ACCA. There was no dispute concerning the two more recent priors. In Petitioners second claim of deficient representation by trial counsel "the failure of counsel to challenge the search of his apartment that was unreasonable" was ineffective under Strickland v. Washington, 466 U.S. 668 (1984). Petitioner discovered through diligent research with the aide and assistance of jail-house legal assistants, that he additionally has a Fourth Amendment violation of illegal search and seizure based upon an unreasonable and unnecessary search warrant application filed by the arresting officer as "overkill" and for (possibility) of jacking up his sentence, inter alia:

> The Fourth Amendment of the United States Constitution governs all searches and seizures conducted by Government agents. The Amendment contains two separate clauses: a prohibition against unreasonable searches and seizures, and a requirement that probable cause support each warrant issued. See U.S. Const. Amend. IV.

During the month of February, 2009, detectives Brown and Avitia of the Baltimore City Police Department received information from a confidential informant #2654 in regards to a CD's dealer [FN 2], that was selling narcotics from his vehicle within the northern end of Harford Rd in Baltimore City. The vehicle was described as a Silver Jaguar. On 3/5/09 at approximately 1820 hours (6:20 p.m.) detectives Bagdon, Brown and Avitia were patrolling in the 7000 block of Harford

---

FN 2 — No other valid information, regarding a physical description of this alleged "CD's dealer" was provided.

Rd. At that time we observed a silver Jaguar [FN 3], bearing Maryland tag number 3ET-M19 being driven by a male later identified as Damon Dickerson, m/b, 8/9/72 exit the rear alley of the 7000 block of Harford Rd. These detectives followed the vehicle as it traveled s/b on Harford Rd. These detectives ran the tag through KGA police dispatch. The vehicle came back to a 1994 Jaguar owned by Damon Dickerson, 8/9/72, 5-11, and 310 lbs. KGA further advised that Damon Dickerson was wanted  under warrant #103121047 through the Baltimore City Sheriff's Office. KGA further advised that he was to be considered armed and dangerous. The vehicle was subsequently stopped in the 5300 block of Harford Rd. (See Exhibit  B , for continuation of "Probable Cause" report).

Petitioner asserts that, (as argued below), had trial counsel properly investigated this matter from the outset as required under Sixth Amendment case law dealing with duty of trial counsel, see Kimmelman v. Morrison, 477 U.S. 365 (1986) Petitioner would not have pleaded guilty without advancing his rights for this court conducting a proper suppression hearing in light of the evidence obtained at his apartment being the product of illegal search and seizure and the "Fruit of the Poisonous Tree" doctrine. Based on the arguments presented below, trial counsel abandoned an obvious Fourth Amendment violation claim(s) that are meritorious. The facts stated above unambiguously and clearly stated a valid and meritorious illegal search of Petitioner's car and apartment.

Under the prongs of Strickland v. Washington, 466 U.S. 668 (1984), functioning in conjunction with guilty pleas under Hill v. Lockhart, 474 U.S. 52 (1985) and prejudice under Kimmelman v. Morrison, 477 U.S. 365 (1986) and Glover v. United States, 531 U.S. 198, 203 (2001), inter alia, trial counsel was ineffective in not investigating, and thus submitting this issue(s) for litigation in this

---

FN 3 - At the time of the alleged informant's tip, no immediate investigatory action was initiated or followed up on by these officers. Cf. United States v. Jones, 1998 U.S. App. LEXIS 7775 (4th Cir. 1998).

Honorable Court on Petitioner's behalf. As stated below, Dickerson can show a "reasonable probability" that absent his counsel's ineffective performance he would have obtained a verdict leading to less time in prison, then, applying Strickland, Glover, Hill, and Kimmelman, inter alia, he has satisfied the prejudice prong of the ineffective assistance of counsel test.

## Summary

Failure of trial counsel to adequately research the law concerning Petitioner's prior conviction that was uncounseled, with no valid proof he waived right to counsel knowingly in [that] state court proceedings, was a violation under Strickland v. Washington, 466 U.S. 668 (1984) and Gideon v. Wainwright, 372 U.S. 335 (1963).

Trial counsel additionally provided deficient representation in failing to argue that the evidence in Petitioner's car and apartment was obtained in violation of the Fourth Amendment's illegal search and seizure clause.

Upon a proper review of these claims, Petitioner avers he has made an adequate showing of the denial of a Constitutional right to have effective counsel as guaranteed under the Sixth Amendment.

## Standard of Review

To establish ineffective assistance of counsel "a defendant must show both deficient performance by counsel and prejudice." Knowles v. Mirazayance, 566 U.S. ___, 173 L.Ed.2d (2009). In addressing this standard and its relationship to AEDPA, the court today in Richter, ante, at ___ ___ ___, 131 S.Ct. ___, 178 L.Ed. 2d 624, gives the following explanation:

"To establish deficient performance, a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonable-

ness." [Strickland] 466 U.S. at 688 [104 S.Ct. 2052, 80 L.Ed.2d 674]. A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance, Id., @ 689 [104 S.Ct. 2052, 80 L.Ed.2d 674], that's guaranteed the defendant by the Sixth Amendment, Id., @ 687 [104 S.Ct. 2052, 80 L.Ed.2d 674. "With respect to prejudice, a challenger must demonstrate 'a reasonable probability' that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

Surmounting Strickland's high bar is never an easy task. Padilla v. Kentucky, 559 U.S. ___ [130 S.Ct. 1473, 176 L.Ed.2d 284] (2010). An ineffective assistance claim can function as a way to escape rules of waiver and raise issues not presented at trial [or in pretrial proceedings], and so the Strickland standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve. Strickland, 466 U.S. at 689–690 [104 S.Ct. 2052, 80 L.Ed.2d 674]. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.' Id., @ 689 [104 S.Ct. 2052, 80 L.Ed.2d 674]; see also Bell v. Cone, 535 U.S. 685, 702 [122 S.Ct. 1843, 152 L.Ed. 2d 914]; Lockhart v. Fretwell, 506 U.S. 364, 372 [113 S.Ct. 838, 122 L.Ed.2d 180] (1993). The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom. Strickland, 466 U.S. @ 690 [104 S.Ct. 2052, 80 L.Ed.2d 674].

The question's become, in the instant matter, whether Petitioner's trial counsel, Mr. Alan Bussard, Esq., was ineffective for failing to investigate the law, under Gideon v. Wainwright, 372 U.S. 335, 342 (1963), as it was directly applicable to Petitioner's prior conviction (see Crim. No. CCB-09-0402, Trial Transcript Nov. 9, 2010, pages 20 thru 28 (hereinafter Tr. 11/9/10 (p. or pp.)), in 1995, in the Circuit Court for Baltimore City, for possession with intent to distribute controlled dangerous substance. And said conviction was factually proven in this court, uncontestingly, without legal representation. Plus, it was also determined by this court that there was no valid plea waiver, submitted by this Petitioner, to forego counsel at that particular state proceeding in 1995.

The second claim of error being contested herein this § 2255 pleading is whether trial counsel Mr. Bussard was ineffective for failure to investigate and challenge the search of his vehicle that also led to the search of his car and apartment, in this case on March 5, 2009. And that the search was unconstitutional under Arizona v. Gant, 556 U.S. 332 (2009). In fact, it was a second warrantless search of his car — unconsented — that led to a utility bill and subsequent request for a search warrant that led to the search of Petitioner's apartment. See Shamaeizaden v. Cunigan, 338 F.3d 535, 548, 549-550 (6th Cir. 2003).

### Argument One

PETITIONERS GUILTY PLEA, AS A WHOLE, WAS INVOLUNTARY AND UNINTELLIGENT WHERE TRIAL COUNSEL FAILED TO ARGUE THE LAW OF Gideon v. Wainwright, 372 U.S. 335 (1963) AND APPLYING IT PETITIONERS 1995 STATE CONVICTION, PREVENTING IT FROM BEING USED TO ENHANCE PETITIONER AS AN ARMED CAREER CRIMINAL IN VIOLATION OF Hill v. Lockhart, 474 U.S. 52 (1985) AND Strickland v. Washington, 466 U.S. 668 (1984), inter alia.

In Hill v. Lockhart, 474 U.S. 52 (1985), the Court, in one of its holdings determined and specified that, "The long-standing test for determining the validity of a guilty plea" is "whether the plea represents a voluntary and intelligent

choice among the alternative courses of action open to the defendant." <u>North Carolina v. Alford</u>, 400 U.S. 25, 31 (1970); see <u>Boykin v. Alabama</u>, 395 U.S. 238, 242 (1969); <u>Marchibroda v. United States</u>, 368 U.S. 487, 493 (1962). Here Petitioner contends that his plea was involuntary and unintelligent because counsel's advice was improper due to his failure to adequately research the law under <u>Gideon v. Wainwright</u>, 372 U.S. 335 (1963), which the principle was further developed in <u>Burgett v. Texas</u>, 389 U.S. 109 (1967), making it unconstitutional to permit a conviction obtained in violation of <u>Gideon v. Wainwright</u>, to be used against a person either to support guilt or enhance punishment for another offense (see <u>Greer v. Beto</u>, 384 U.S. 269) is to erode the principle of that case. Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right." <u>Id</u>. at 114-15. See also <u>United State v. Darity</u>, 400 Fed. Appx. 786 (4th Cir. 2010).

The courts have found very few situations in which a defendant can challenge a prior in the course of sentencing under ACCA. In holding that such proceedings do not provide a forum for collaterally attacking prior convictions, the Supreme Court in <u>Custis v. United States</u>, 511 U.S. 485 (1994) recognized one exception: "We hold that a defendant has no such right (with the sole exception of convictions obtained in violation of the right to counsel) to collaterally attack prior convictions." <u>Id</u>. @ 487. See also <u>United States v. Bacon</u>, 94 F.3d 158 (4th Cir. 1996). Hence, this Petitioner, has the right and entitlement (according to the above authority) to raise and argue this issue here. And this court is 'automatically' provided with jurisdiction to entertain this issue as presented on the merits. Petitioner asserts, after careful research conducted in this matter with the

assistance of jailhouse legal aides his trial counsel was ineffective for not

contesting the   validity of the prior Baltimore City 1995 drug conviction as

outlined here. And as a result, he not only entered his plea on ill-advise of

counsel, but the court, under the law invoked above, improperly considered and

used an invalid prior conviction to enhance this Petitioner under the ACCA.

The facts here reveal that trial counsel advised Petitioner to plead as

an 'Armed Career Offender' without adequately researching the law regarding

"uncounseled" prior convictions and their inapplicable force to serve as enhancements,

except in narrow circumstances. See Burgett v. Texas, 389 U.S. 109, 114-15 (1967):

> "Gideon v. Wainwright, established the rule that the right to counsel
> guaranteed by the Sixth Amendment was applicable to the states by virtue
> of the Fourteenth, making it unconstitutional to try a person for a
> felony in a state court unless he had a lawyer or had validly waived one."
> Id. @ 114.

At the plea session and again at sentencing, Petitioner expressed concerns

about the constitutionality of his 1995 prior conviction for possession with

intent to distribute a controlled substance had in the Baltimore City Court. See

Discussions between counsel and court here at Tr. 11/9/10, p.20:

> By Mr. Bussard - "[...] Moving on to the first conviction, the 1995
> conviction in the Circuit Court for Baltimore --."

> By the Court - "Just noting, though, the conviction in paragraph two
> catagorically qualifies as a predicate conviction. Therefore, the
> transcript does not necessarily have the significance that it might
> for a crime of violence issues. Although I certainly understand that
> in doing your job thoroughly, you would like to look at the transcripts
> if it were there."

> By Mr. Bussard - "I would, and I have explained to Mr. Dickerson that
> the transcript is but one factor that is helpful. It is not dispositive
> of the issue."

> By the Court - "Right."

> By Mr. Bussard - "Moving on to the conviction in paragraph one of
> attachment A of the plea agreement, the 1995 case, I will tell the

Court that Mr. Mihok, Ms. Schrum, who is here from Probation, and myself, all determined quickly that there is no file existing in the Circuit Court for Baltimore City. The file has been stripped. We all three individually, and independently, filed a request with the archives. The official name of the archives is the Maryland State Archives, the Hall of Records. I received a response back dated September 21, 2010 from the archives which included -- I would be happy to put this in the record, but I think we are all stipulating that this is the record as it is. There is a -- well, I would be happy to show it. Maybe I will have this marked for identification --."

By the Court - "Sure."

Id. @ Tr. 11/9/10, pp.20-22.

Trial counsel Mr. Bussard further went on, and this is the essence of the issues, that:

"Moving on, the records, and this may be the most important part, the records reflect that there was a conviction. It appears that it was an ["]uncounseled["] conviction. There is no entry of appearance noted in the documents that I received from the archives to reflect that Mr. Dickerson was either represented by counsel or not represented by counsel. In fact, there's no appearance by the States attorney either on this record."

"The proceeding came before Judge Roger Brown on January 18, 1995, and at which time therewas a guilty plea, and the sentence as noted was imposed. The other documents are whats called a commitment record."

Id. @ Tr. 11/9/10, p.23.

Apparently there was some other discrepancies discussed between the Government, trial counsel, and the Court regarding the actual plea date of the 1995 offense and conviction but it was determinately resolved. See Tr. 11/9/10, p.24:

By Mr. Mihok (Gov't) - "I think that is, I think the clear implication is that the defendant was arrested and in custody from the date of the offense, January 18, 1995, until the date he plead guilty, and that he be given credit essentially for that time that he spent in custody."

By the Court - "That looks about right."

By Mr. Bussard - "The defense is not really disputing that sequence of events. The importance of the documents that have just been presented to the court is that it appears that he was not counseled. What I suspect,

and Mr. Dickerson is under oath and will be happy to tell the court,
this was an arraignment court, for want of a better word. He was brought
over. He was offered a plea, and he accepted it. It was essentially just
a discussion between himself and Judge Roger Brown that day. There was
no counsel there. He has no recollection of even a states attorney being
there, but there must have been one. He's 99 percent there was no counsel
for himself.

By the Court – "Okay. Yes I'm also not finding anything that indicates
counsel for Mr. Dickerson. It's a guilty plea to possession of cocaine
base in sufficient quantity to reasonably indicate intent to manufacture
and distribute. So we will make that part of the record."

By Mr. Bussard – "Yes, you Honor. I would ask that maybe a copy be made so
I can have a copy. I would appreciate that. That should be marked as defense
exhibit 1."

(Defendant's exhibit number 1 was received).

By the Court – "All right. What if any is the significance of the lack
of counsel relating to that conviction?"

By Mr. Bussard – "Your Honor, I have reviewed the documentation that the
Court has before it. It is my opinion that the conviction itself, the
documentation proves that there was a conviction entered. Whether that is
a valid conviction I don't know. It is simply a fact that he appears to
be uncounseled there. I don't know the significance of it. I have not filed
a coram nobis in that case, and I am not sure under state law whether a
coram nobis would be successful." "[...] That is really the reason that
Mr. Dickerson has hedged so many times on this guilty plea, because of
that 95 conviction. Having said that, the court has already determined
that he does agree with the statement of facts here today. We are leaving
it up to the Court to decide whether that is a conviction, a qualifying
conviction for purposes of § 924(c) based on those documents, and I believe
everybody has the same set of documents at this point." Id.

By the Court – "Okay. Is there anything, Mr. Dickerson –– you don't need
to, and you can talk to Mr. Bussard first, but is there any additional
question or comment about your criminal record that you wanted to make
at this point?"

(Pause).

By Mr. Bussard – "Mr. Dickerson has confirmed that he is in agreement with
the statements made by myself to the Court today, summarizing in its entirety
everything he wanted to bring to the Court's attention." Id. (Trans. 11/9/10,
p.27).

By the Court - (in part) "Okay. Going back to the plea agreement in that
case, in paragraph 6, 'assuming' that those three prior convictions do
qualify Mr. Dickerson as an armed career criminal, you have an agreement
at 6(a) that the base offense level would start at a 34. There would be
mandatory minimum term of 15 years [...]. It says that you understand for
sentencing purposes you are agreeing that you are an armed career criminal,
that three are no disputes about the sentencing guidelines..." Id., @ p.28
(Trans/ 11/9/10).

The above transcribed proceedings clearly and unambiguously supports

Petitioner's claim that his trial counsel. Mr. Bussard, was ineffective in advising

him to admit and agree that he was an "armed career criminal." At the time of

Petitioner's guilty plea proceedings, the law of Gideon v. Wainwright, supra, and

its progeny cases, was well entrenched, widely known in all federal judicial

circuits, and clearly established federal law. Moreover, Petitioner's Appellate

counsel, clearly and methodically invoked the law of Gideon, during the drafting

and preparation and filing of his Direct Appeal. See United States v. Dickerson,

App. No. 11-4055, Aug. 5, 2011 (4th Circuit). However, the Fourth Circuit denied

the claim relying on a "waiver provision" of his right to appeal his conviction

and sentence of 188 months imprisonment had in this court. Id., @ p.2, App. No.

11-4055, Doc. No. 39 (12/8/11)(4th Cir. 2011)(unpublished). Had Appellate counsel

argued this issue as a Sixth Amendment violation that Petitioner's guilty plea was

involuntary and unintelligent due to ineffective assistance of counsel (for the

reasons presented here) it is highly probable that there would have been a

different judgment by the Fourth Circuit.

Despite the fact that Petitioner agreed to the "waiver provision" in the

plea agreement, and also admitted that he was an "armed career criminal," he

cannot be forced to waive his right to challenge his plea agreement and any

waivers on the grounds of ineffective assistance of counsel under Hill v. Lockhart,

474 U.S. 52, 59 (1985) and <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). See also, <u>United States v. Johnson</u>, 410 F.3d 131, 151 (4th Cir. 2005)(holding a petitioner is entitled to appeal, despite his waivers, if only to challenge the enforceability of his waivers). [FN 4].

As outlined in <u>Benton v. Maryland</u>, (See FN 4), the "plea waiver" cannot be enforced by this court and summary dismissal would be inappropriate in this matter. Due to the facts unquestionably indicating that trial counsel's failure to raise and argue, at sentencing, that Petitioner's prior <u>uncounseled</u> 1995 felony drug conviction, had in the Baltimore City Court, was in violation of <u>Gideon v. Wainwright</u>, supra. And had Mr. Bussard addressed this issue in the manner that's being presented now, the Government would have been hard pressed to convince this court otherwise. Therefore, under <u>Hill</u>, <u>Srickland</u>, <u>Glover</u>, <u>Gideon</u>, supra, inter alia, Petitioner can reasonable show that his guilty plea, as a whole, was involuntary and unintelligent because of counsel's failure to make a <u>Gideon</u> claim.

FN 4 - This court is directed to compare the case of <u>Benton v. Maryland</u>, 395 U.S. 784, 797 (1969). The Court here held that upon a two count indictment of burglary and larceny which the jury found him guilty of burglary and not larceny, and because the grand and petit juries had been unconstitutionally selected, his case was remanded back by the Maryland Court of Appeals for a new trial, and that he was found guilty again of both larceny and burglary, it was a violation of the Double Jeopardy Clause for him to be convicted upon the larceny offense after being acquitted of it at his first trial. id., @ 395 U.S. 797. In this case, Maryland argued that <u>Green v. United States</u>, 355 U.S. 184 (1957), "explaining the core values rooted in the founding bases of double jeopardy," should not apply to the <u>Benton</u> defendant because his original indictment was absolutely void. After careful review of the principles of double jeopardy, with cited authority, the Supreme Court reasoned, "Petitioner was acquitted of larceny. He has, under <u>Green</u>, a valid double jeopardy plea which he cannot be ["] forced to waive.["]" Id., @ 797. The same logic of law and reason should follow here. Trial counsel, Mr. Bussard for whatever reason, failed to adequately research the law on proven "uncounseled" prior convictions, and was unable to produce such law in addressing the district court's inquires, see Trans. 11/9/10, p.25: By the Court - All right. What if any is the significance of the lack of counsel relating to that conviction." Id. With the relevant ease it would have taken to perform such 'mandated' research, he was not able to address the court's inquires on this subject. Thus, since Petitioner relied on counsel's advice to accept the terms of the plea agreement, and admit in open court that he was an "armed career criminal," he entered that version of the plea process unknowingly and unintelligently under <u>Hill v. Lockhart</u>, 474 U.S. 52, 54 (1985), and counsel was thus ineffective under both prongs of <u>Strickland</u>, 466 U.S. 668, 694 (1984).

Prejudice occurred because had his 1995 drug conviction not been applicable Petitioner would have received a lesser sentence. See Glover v. United States, 531 U.S. 198, 203 (2001). Petitioner has established a challenge to his guilty plea as involuntary and unintelligent due to a valid Sixth Amendment constitutional violation that cannot be waived under the circumstances. See Benton v. Maryland, 395 U.S. @ 797; Johnson v. Zerbst, 304 U.S. 458, 463 (1938), inter alia.

## Conclusion

In light of the above facts and authorities, Petitioner duly wishes to point out that he is not seeking reversal of the conviction in this instant claim. What he is seeking in this instant claim at this juncture, is for this Honorable Court to reverse and remand this matter for resentencing. The Government relied upon a prior conviction that was invalid under Gideon. Thus, trial counsel was ineffective under Strickland, Hill, and Glover, inter alia, to protect this Petitioner's rights to a fair sentence.

## Relief Sought

Wherefore, Petitioner prays for this Honorable Court to grant relief in this matter, and or appoint counsel and conduct an evidentiary hearing and promptly resolve the matter.

## Argument Two

PETITIONERS GUILTY PLEA, AS A WHOLE, WAS INVOLUNTARY AND UNINTELLIGENT WHERE TRIAL COUNSEL WAS INEFFECTIVE UNDER Kimmelman v. Morrison, 477 U.S. 365 (1986), TO CHALLENGE THE ILLEGAL SEARCH OF PETITIONERS CAR UNDER Arizona v. Gant, 129 S.Ct. 1710 (2009), THAT LED TO THE DISCOVERY OF EVIDENCE AT HIS HOME.

According to the facts described in the police report during the month of February, 2009, (no exact date is provided)(see arrest report attached hereto), Detective Brown and Avitia received information from a confidential informant

#2654 in regards to a CD's dealer (no name or physical description was provided) that was selling narcotics from his vehicle within the Northern end of Hartford Rd. (no exact location was provided, Hartford Road stretches for miles) in Baltimore City. The vehicle was described as a Silver Jaguar (no tag number or year model was provided). On 3/5/09 at approximately 1820 hours detective Bagdon, Brown and Avitia were patrolling in the 7000 block of Hartford Road. The officers stated that they observed a Silver Jaguar bearing MD tag number 3ET-M19 being driven by a male later identified as Damon Dickerson, m/b, 8/9/72 exit the rear alley of the 7000 block of Hartford Road.  [FN 5]. These detectives followed the vehicle as it traveled s/b on Hartford Road. These detectives ran the tag through KGA police dispatch. The vehicle came back to a 1994 Jaguar owned by Damon Dickerson, 8/9/72, 5-11, and 310 lbs. KGA further advised that Damon Dickerson was wanted under warrant #10-3121047 through the Baltimore City Sheriffs Office. KGA further advised that he was to be considered armed and dangerous. [FN 6] The vehicle was

---

FN 5 - There is no specific date, in February of 2009 that the "so-called C.I." allegedly called to the detectives. And the information (allegedly) given to the detectives - about a person or persons selling drugs from a Silver Jaguar - is so vague that it would be virtually impossible for a reasonable thinking person to act on such information without more details. Plus, the time frame on the information is possibly stale in order for the police to have continued reliability on it. Failure of the officers to act on the information when first received via conducting a brief or cursory investigation to determine 'any' validity of it should give pause to the court to consider whether the officers acted reasonably in spotting Petitioners Silver Jaguar and running his tags. Obviously, it was this so-called informants tip that was allegedly received 'weeks' earlier, that caused the detectives to initially run Petitioners tags.

FN 6 - The officers produced no proof in their police report that this (alleged) allegation "he was to be considered armed and dangerous" was actually stated to them. Other than the fact that they wrote it, there should have been a date and time entered, and or a possible recording of the transmission between the KGA and detectives regarding this statement towards Petitioner. Any competent attorney would have made reasonable efforts to gather this information.

subsequently stopped in the 5300 block of Hartford Road. [FN 7].

Detective Bagdon approached the drivers side of the vehicle as detective

Brown approached on the passenger side as detective Avitia stayed inside the police

car in case Mr. Dickerson drove off (see police report). As soon as the detective

FN 7 – In United States v. Bynum, 293 F.3d 192, 196 (4th Cir. 2002), the court cited United States v. Wilhelm, 80 F.3d 116 (4th Cir. 1996), in providing guidance to determine if the district court's judgment "...after receiving an anonymous telephone tip that an informant had seen marijuana being sold in the defendants home within the past 48 hours," an officer applied for a search warrant. Wilhelm, 80 F.3d @ 117–18. The officer did not meet the informant before or after receiving the tip and did not meet the informant before or after receiving the tip and did not know the informant." Id. @ 118. The Bynum court further stressed, "[i]n support of the warrant, the officer described the informant was as a "concerned citizen" and a "mature person with personal connections with the suspects [who] has projected a truth-full [sic] demeanor to this applicant." Id. [B]ecause [t]he officers only corroborating information was that she confirmed directions to the residence and that the description of the marijuana and of the sale transactions was consistent with her knowledge of marijuana packaging and sales. Id. The Bynum court held that the Leon Good Faith Exception did not apply because the officer "could not reasonably rely on an unknown, unavailable informant without significant corroboration" id., @ 123, and the magistrate thus acted only as a "rubber stamp" in approving a "bare bones" affidavit. Id., @ 293 F.3d 196–97. Whereas here, the February 2009 phone call only identified the CI with a number. There was no further information or any explicit link as to this alleged source's prior proved reliability. However, it was this information that led to the detectives calling in the tags to the Silver Jaguar. Had it not been for this alleged informants tips: "a person in a Silver Jaguar was selling drugs," the detectives would have never ran Petitioners license plates. The detectives knew that their whole approach to pulling over Petitioner was wrong. The only legitimate circumstance that that they could reasonably rely on to continue their unjustified stop and overzealous actions towards Petitioner on March 5, 2009 was the fact he was a probation violator (which they only found out after running his tags while following him after "remembering a so-called informants tip" – that is questionable based on the absence of provence – about a Silver Jaguar of which no year, license plate number, or any other identifying trait was given describing this car). Moreover, after the first search, on the basis that a "retractable button" was intentionally described as a sheaved knife in order to knowingly support an illegal search of the car, a second illegal search a couple hours later produced the utility bill that led to the search warrant for the apartment. Under this Circuits law in Wilhelm, 80 F.3d 116 (4th Cir. 1996) and Bynum, 293 F.3d 196–97 (4th Cir. 2002), the facts here duly indicates that the initial and second search of the car was illegal under Leon, 468 U.S. @ 923, and Arizona v. Gant, (2009)(U.S.), which would lawfully and reasonably render the affidavit securing the search warrant, see Illinois v. Gates, 462 U.S. 213, 238 (1983) for Petitioners apartment unconstitutional and warrants this courts application of the exclusionary rule and suppression of the evidence from the car and the apartment.

(Bagdon) approached Petitioner, he immediately opened Petitioner's car door, saw that his left arm was in a sling and possibly injured, grabbed Petitioner from the driver's side of the car, said he was under arrest for an outstanding probation warrant, and taken to the rear of the car and held under watch by both himself and another officer. (Although this version differs from the one in the police arrest report; see attachment). Detective Brown (as presumed in the report) was conducting a full-fledge search of Petitioner's car. Detective Brown then waived to one of the detectives (after they had handcuffed Petitioner's injured arm to his right hand) and said he "found some stuff." At no time was this Petitioner searched (physically) until after the search of the car was completed. (See Affidavit of Dickerson attached hereto). Also, an additional search had taken place at the police station approximately two or three hours later. And it was the second search in which the officers found a utility bill with Petitioners name and address on it that caused them to go to his home/apartment with a warrant to search it. Petitioner avers, and now complains that his plea agreement was involuntary and unintelligent where his counsel failed to challenge this Fourth Amendment claim during a suppression hearing and  during the pre-plea negotiation process. See Kimmelman v. Morrison, 477 U.S. 365 (1986). Prejudice is presumed under Glover v. United States, 531 U.S. 198, 203 (2001), because had his counsel successfully moved to suppress the evidence found in his car and the evidence found in his apartment, Petitioner would have received less time in prison and could have negotiated a better plea agreement. See also Strickland v. Washington, 466 U.S. 668 (1984) and Hill v. Lockhart, 474 U.S. 52, 59 (1985). The first search of Petitioner's car was not incident to his arrest nor was it for evidence relevant to the crime of his arrest (i.e., Petitioner was arrested for an outstanding

probation violation warrant which no evidence of this offense could have been

reasonably found in Petitioner's car). The second car search at the police

station was invalid because it too was not incident to Petitioner's arrest i.e.,

a probation violation warrant. The officer's in this case violated the Petitioner's

Fourth Amendment rights to be free from an unlawful search and seizure. See

Arizona v. Gant, 129 S.Ct. 1710 (2009); Chimel v. California, 395 U.S. 754 (1969);

see also United States v. Vasey, 834 F.2d 782 (9th Cir. 1987) (holding the starting

point for any search incident to arrest analysis is Chimel v. California, 395 U.S.

754 (1969)).

In Arizona v. Gant, 129 S.Ct. 1710 (2009), the court held specifically:

> "Police may search the passengers compartment of a vehicle incident
> to a recent occupant's arrest only if it is reasonable to believe
> that the arrestee might access the vehicle at the time of the search
> or that the vehicle contains evidence of the offense of arrest."
> Gant, 173 L.Ed.2d 485, 490 (2009).

Petitioner was pulled over, immediately removed from the car by Det. Bagdon,

informed he was "under arrest" for an outstanding probation violation warrant and

hastily taken behind his car handcuffed and guarded by two armed detectives while

a third detective entered and proceeded to search his car. (See Affidavit of

Dickerson).

Under Gant, and its cited authorities and doctrine, the circumstances here

did not justify the search of Petitioner's car as a search incident to lawful

arrest. Petitioner was immediately removed from his car, arrested for a probation

violation warrant, and handcuffed. Therefore, there was no reason to believe the

vehicle contained evidence for the offense for which the Petitioner was arrested.

In this case, the detectives were being over zealous in the pursuit of other

evidence for which the Petitioner was not initially arrested for. See Gant,

supra. [FN 8]. Part of the Gant decision was founded on the basis (at the State

level, see 143 P.3d 379, 385 (App. 2006)), that "the search of Gant's car was

not incident to his arrest because it was not contemporaneous with his arrest and

did not satisfy the rationales set forth in Chimel v. California, 395 U.S. 752

(1969), for dispensing the warrant requirement." Id. Whereas in the instant matter,

Petitioner was injured with only one functional arm and hand, and swiftly

(simultaneously) taken out the car while being told he was under arrest for a

probation violation, and forcefully removed to the rear of the car and handcuffed.

    Although the Government may position that the 'arrest report' states

otherwise, in order to state a contemporaneous defense against Petitioners factual

assertion's. A careful reading of the police report indicates there are 'missing

pieces' of the stop, that would suggest the officer's had time to orchestrate a

perfect arrest procedure. For example, they just happen to see a Silver Jaguar

on March 5, 2009, and remembered a call from a CI way back in February of 2009

(But never bothered to investigate the matter at all). So it is assumed that

'no other' criminal reports or activity had taken place in the jurisdiction of

their police station's patrol area's after that February call. And as a result

of all the day's and weeks passed the detectives had never bothered to explore

the Harford Road area for this alleged Silver Jaguar. And it is also assumed that

this so-called confidential informant #2654, has provided reliable intel before

---

FN 8 – After they hastilly pulled Petitioner from the car, there only other duty
was to secure the car (and possibly retrieve the springloaded retractable button
(not knife). They had no authority to conduct a 'full blown search' that was not
an "inventory search" such as going in the ceilling light, and ripping up the
door panels and center console etc. (See police report @ Exhibit  A ). They would
or could not have found evidence relevant to the crime of a **"probation violation"**
in the car after the removal of Petitioner and handcuffing him at the rear of the
car **"before"** they pat searched him. Gant, supra.

that resulted in arrests and convictions. Which remains to be considered why at least, a minimal physical description of the narcotics dealer was not given, and or, at least, a tag number of the Jaguar. Petitioner is 5'11 tall and 310 lbs. It is highly doubtful that he could be missed from an individual close enough to observe him doing drug transactions in relatively small amounts. Plus, it was alleged (in the arrest report) that Mr. Dickerson was to be considered armed and dangerous. What is odd and peculiar here is that Mr. Dickerson was not living under an assumed alias; all of his property was listed in his real name; even his rent, and utility bills were addressed in his real name. In other words, he did not appear to be incognito, as most armed and dangerous persons with warrants tend to do. Thus, these facts raise questions as to the validity of facts authored by the arresting detectives. In fact, Petitioner had his hands in plain view on the stirring wheel as the officers approached as to indicate or signify, to them that he was in full compliance and was not a threat. Petitioner is well aware of the "Ghost" stories of how officers have been known to shoot first if they fear the slightest of threats, in the State of Maryland and Baltimore. And it was not a knife behind the drivers seat. It was a springloaded retractable button. The detective whom pulled Petitioner out of the car had started playing with it during the course of the arrest. Detective Brown, had engaged in a full blown search of the car as Petitioner was being walked behind the car and handcuffed. And it's not like the Detectives did not, or could not, have 'doctored up" the arrest report to make it fall into place within acceptable conduct of legal search and seizures incident to arrest. It is clear and obvious that they were well aware, in some pertinent part of the law under the Fourth Amendment by the language they used in the arrest report (in part): "[.] search

incident to arrest, Detective Brown found a hidden compartment within the

vehicle in the roof interior light." See Exhibit _B_ , p. _2_ . Trial counsel,

Mr. BUssard, was given all these detailed facts, but declined to act on them.

(See Affidavit of Damon Dickerson).

Thus, this court should adopt the same position that the _Gant_ court did

(above) and hold that Petitioners rights under the Fourth Amendment were indeed

violated by the actions of the Baltimore City Detectives.

The Fourth Amendment guarantees the right of citizens to be free from

unreasonable governmental searches. U.S. Const. Amend. IV; See also _Terry v. Ohio_,

392 U.S. 1, 9(1968). "[s]ubject only to a few specifically established and well

delineated exceptions," a search is presumed to be unreasonable under the Fourth

Amendment if it is not supported by probable cause and conducted pursuant to a

valid search warrant. _Katz v. United States_, 389 U.S. 347, 357 (1967). The Supreme

Court has recognized a "search incident to a lawful arrest" as one of the

exceptions to the Fourth Amendments warrant requirement. See e.g., _Chimel_, 395

U.S. @ 755. The court justified the search incident to arrest exception by the

need to protect officers and preserve evidence:

> "When an arrest is made, it is reasonable for the arresting officer to
> search the person arrested in order to remove any weapons that the latter
> might seek to use in order to resist arrest or effect his escape. Otherwise,
> the officer's safety might well be endangered, and the arrest itself
> frustrated. In addition, it is entirely reasonable for the arresting officer
> to search for and seize any evidence on the arrestee's person in order to
> prevent it's concealment or destruction. And the area into which an arrestee
> might reach in order to grab a weapon or evidentiary items must, of course,
> be governed by a like rule. A gun on a table or in a drawer in front of
> one who is arrested can be as dangerous to the arresting officer as one
> concealed in the clothing of the person arrested.

Id. at 762-63. Based on the rationales of officer safety and preservation of

evidence, the court limited the permissible scope of a search incident to arrest

to the "arrestee's person and the area 'within his immediate control'" that is,
"the area from within which he might gain possession of a weapon or destructible
evidence." Id. @ 763. Although the rule has worked reasonably in some context,
it has proved difficult to apply to automobile searches incident to arrest, prompting
the Supreme Court to reconsider and redefine the permissible scope of such a search.
See New York v. Belton, 453 U.S. 454, 455 (1981). In Belton, the sole question
before the court was the "constitutionally permissible scope" of an otherwise
lawful search of an automobile incident to arrest, given the exigencies of the
arrest situation. Id. @ 455, 457; See also Thorton v. United States, 541 U.S.
615, 619 (2004)(describing Belton as deciding "the constitutionally permissible
scope of a search" incident to arrest). Noting in particular, the arrest report
here allegedly claimed that (in relevant part):

> "As Detectives Bagdon and Brown were approaching the vehicle they observed
> Mr. Dickerson moving his right hand quickly to the center console of the
> vehicle. Detective Brown further (sic) noticed what appeared to be a large
> knife in a sheaf directly behind Mr. Dickerson on the floor in the rear
> area of the vehicle." Id.

However, although this portion, inter alia, of the arrest report is hotly
disputed because as averred above, there was never no knife and sheaf. It was
only a springloaded button. (See above). Petitioner was approached by both
detectives simultaneously and immediately removed from the car. (See above). The
search of the automobile did not commence until after Petitioner was secured at
the rear of the car. Moreover, Petitioner had suffered through at least three
subsequent searches prior to the search warrant being obtained (as the result of
the last and final search of his car, that was an additional "second search"
without a warrant) for his home. See Shamaeizaden v. Cunigan, 338 F.3d 535, 548,
549-550 (6th Cir. 2003). Petitioner relies expressly on the law doctrined in

Shamaeizaden, that extensively lectures about the constitutionality of warrantless
second and successive searches. This case is a prime example of when a second and
successive search is unconstitutional. Petitioner's car was searched initially
without consent or warrant by overzealous officers. He was wanted and arrested for
an outstanding probation violation warrant. So after the officer's pulled him
over and immediately removed him from the car, the only initial search should have
been conducted upon himself, not the car, and then the Petitioner, and then the
car again (after a second full cavity body search was conducted at the Police
station). The facts show that, as a result of the warrantless second search of
Petitioner's automobile, the detectives located a utility bill that was addressed
to Petitioner. They then proceeded to contact a judge and went straight to
Petitioner's apartment with his keys. Under the 'law doctrine' in Shamaeizaden,
supra, the search of Petitioner's apartment was unconstitutional, and this court
should apply the Exclusionary Rule pursuant to the Fruit-of-the-poisonous-tree-
doctrine.

Petitioner concludes this argument with the realization that had his trial
counsel, Mr. Bussard, adequately approached this case with the legal aptitude
necessary and diligence required under the Sixth Amendment as outlined in Kimmelman
v. Morrision, 477 U.S. 365 (1986)(see annotations at 83 L.ED.2d 1112 (when is
attorney's representation of criminal defendants so deficient as to constitute
denial of federal constitutional right to effective assistance of counsel -
Supreme Court cases)), Id., there exist a strong probability of a different
outcome, as presented above. Failure of trial counsel to not competently advance
this claimed violation of Petitioners rights under the U.S. Constitution's Fourth
Amendment Clause to the illegal search and seizure of his automobile and apartment

constitutes ineffective counsel and prejudice under <u>Strickland</u>, <u>Glover</u>, <u>Kimmelman</u>, and <u>Hill</u>, inter alia, supra, as the United States Constitution's Sixth Amendment Clause's guaranteed right to effective assistance of counsel.

Therefore, the evidence received out of Petitioners car and apartment should now be ordered suppressed in light of the facts, principles and authorities articulated above.

RELIEF SOUGHT

Wherefore, Petitioner's prays for this Honorable Court to find that trial counsel Bussard was ineffective under <u>Kimmelman v. Morrison</u>, 477 U.S. 365 (1986), <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), <u>Glover v. United States</u>, 531 U.S. 198, 203 (2001), and <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1984), inter alia, for failure to advance his, inter alia, <u>Gideon</u> and <u>Gant</u> claim's which would have prohibited the Government from using an uncounseled plea, and would have suppressed the evidence obtained from his car and apartment, which would have further lead this Petitioner to receive a lessor sentence under <u>Glover</u>, supra, and then lead to further plea negotiations.

Respectfully submitted,

Date: 11-26-2012

_Damon G. Dickerson_
Damon G. Dickerson, pro se

CERTIFICATE OF SERVICE

I, hereby certify that on this 26 day of November , 2012, a true and correct copy of the foregoing and all attachments were sent via first class mail to the following parties:

Mr. Judson T. Mihok, AUSA
36 S. Charles St., 4th Floor
Baltimore, MD 21201

Respectfully submitted,

_Damon G. Dickerson_
Damon G. Dickerson, pro se
#44380-037, Unit B-2
FCI Cumberland
P.O. Box 1000
Cumberland, MD 21501